HEBER SPRINGS SAVINGS & LOAN ASSOCIATION v. CLEBURNE COUNTY BANK

5-3875                                          402 S. W. 2d 636

Opinion delivered May 2, 1966

[Rehearing denied June 6, 1966.]

*Chowning, Mitchell, Hamilton & Burrow,* for appellant.

*Smith, Williams, Friday & Bowen,* By: *Ben Allen,* for appellee.

PAUL WARD, Justice. This litigation springs from an effort to obtain a charter for a savings and loan association pursuant to certain provisions of Act 227 of the Acts of 1963, being Ark. Stat. Ann. §§ 67-1801 to 67-1862 (Repl. 1966).

On May 25, 1964 a number of residents of Heber Springs, Cleburne County, and vicinity filed an application pursuant to the above mentioned act for a charter from the state for a savings and loan association to be named "Heber Springs Savings and Loan Association" and to be located in said city. The application showed:

1. Permanent stock of the par value of $189,000 had been subscribed by those whose names were listed.

2. The association will commence business with a paid-in surplus, or expense fund, of $50,000.

3. The names and addresses of the officers and directors of the proposed association.

4. The applicants agree to comply with all requirements of said act.

Attached to the application were copies of The Articles of Incorporation, the By-laws, and a list of the subscribers to Permanent Stock. There was also a letter from the president of the Arkansas National Bank of Heber Springs stating that $179,500 had been deposited to the credit of the proposed association.

On November 20, 1964 protests to the above application were filed by the Batesville Federal Savings and

Loan Association, the Cleburne County Bank, and the Bank of Quitman, all contending (1) there was no need for the association, (2) the association would unduly harm their businesses, and (3) it would not be successful.

At the hearing before the five-man Savings and Loan Board there was testimony by the applicants and by the protestants which was recorded, and which constitutes the record before this Court. On December 14, 1964 the Board made, in material parts, the following findings of facts:

1. All prerequisites of the act have been complied with.

2. "The character, responsibility and general fitness" of the applicants, and the proposed officers and directors are such as to command confidence that the affairs of the association will be honestly and efficiently conducted.

3. There is a public need for the association.

4. The volume of business in the area indicates a successful operation.

5. The operation will not unduly harm any other association or other financial institution.

The above findings were unanimously adopted by the Board on December 14, 1964. Then on March 4, 1965, after the proceedings were transcribed and filed, the Board met and issued the Association a charter on a temporary basis, conditioned that it secure insurance of accounts through the Home Loan Bank Insurance Division.

On April 2, 1965 the remonstrants filed notice of appeal to the Circuit Court of Pulaski County. On November 4, 1965 the trial court reversed the Board and ordered it to dismiss the application, on the ground that

there was no substantial evidence to support the Board's action. This appeal follows, the sole contention for a reversal of the trial court being there is substantial evidence to support the findings and action of the Board.

After a careful examination of the record presented to the Board, the trial court, and to this Court we are forced to agree with appellant.

Section 67-1811 (as previously referred to above) provides that the same facts will be presented to the Board, the trial court and this Court, and it also further provides:

> "In any such review the findings of the Board as to the facts, if supported by substantial evidence, shall be conclusive."

Therefore it clearly appears that the trial court must be reversed if we find there is substantial evidence to support the action of the Board.

Under the rule above explained we will therefore look only for substantial evidence, and will not attempt to weigh it against the testimony offered by appellees.

Section 67-1824 provides that before the Board can issue a charter it must make from "the data furnished with the application", the following findings: (1) Appellants have complied with the provisions of the act; (2) The proposed "directors and officers" are such as to "command confidence and warrant belief that the business . . . will be honestly and efficiently conducted . . ."; (3) There is a public need for the proposed association, and the volume of business in the area is such as to indicate a successful operation, and; (4) the operation of the proposed association will not unduly harm any other existing association or other financial institution.

As has been previously pointed out the protestants (appellees), in their answer, did not question a compli-

ance with items (1) and (2) above mentioned. Also we note the fact that the trial court, in reversing the Board, merely found "there is no substantial evidence in the record to support the report and order" of the Board, and did not specify which item was deficient. Consequently it is necessary to examine both of the remaining items.

*One.* There can be no doubt that there is substantial evidence in the record to support the Board's finding there exists a need for the association in Heber Springs. Mr. Harrison, who has lived in Heber Springs for the past seven years, and who appears well acquainted with the fiscal affairs of Cleburne County, testified there was a need for the association and that the people of that county had a hard time arranging for that type of financing. Mr. Duckworth, who lives in Heber Springs, has had experience in trying to obtain loans and has had experience in the savings and loan business. In his opinion there was a real need for the association, that the time element was the greatest problem, and that such association "could get many of the loans now going to insurance companies".

Likewise, there is ample evidence to support the Board's finding that the operation should be successful. The record shows the applicants have already subscribed for more stock in the association than is required by the statute. This fact, the fact that there is a need for this type of loan, and the fact that the business will be handled by honest, capable men, certainly indicates the probability of a successful operation.

Perhaps the most significant piece of evidence offered by appellants to sustain their position is a letter written to the Arkansas Banking Commission by the president of the Arkansas National Bank of Heber Springs, which reads:

"This is to inform you that we are aware of the plans to organize a Savings and Loan Association

in Heber Springs, Arkansas. We are not opposed to the organizing and the issuance of a charter, and feel that there is a large demand for financing of this kind throughout the area they intend to serve.

"I am acquainted with most of the people involved as directors and stockholders and find them to be of fine character and good reputation in the communities."

Also, the testimony strongly indicates that Heber Springs and the adjacent territory is entering upon an era of progress and development due to the large lake nearby.

*Two.* We can find nothing in the record to compel the conclusion that this proposed association will "unduly harm" any other existing loan association or financial institution. Any such conclusion certainly cannot be drawn from the letter quoted above. It is true there is testimony indicating similar businesses in adjoining counties will probably lose many loans they are now making in Cleburne County. However, it appears to us, if these loans are of such volume as to "unduly harm" the outside businesses, it also strongly indicates the need of an association in Heber Springs.

We conclude therefore that the findings of the Board are supported by substantial evidence, and that, consequently, the judgment of the trial court must be, and it is hereby, reversed.

Reversed.

Harris, C. J., dissents.

Amsler and Bland, JJ., not participating.

Carleton Harris, Chief Justice, dissenting. In my view, the ruling of the Pulaski County Circuit Court (Third Division) should be affirmed, because of the provisions of Ark. Stat. Ann. § 67-1824 (3) and (4) (Repl.

1966). Sub-section (3) provides that an applicant for a charter must show that:

"There is a public need for the proposed association and the volume of business in the area in which the proposed association will conduct its business is such as to indicate a successful operation."

No public witnesses testified, and there was no evidence, in my opinion, that would justify a finding that there was a public need for the proposed association at Heber Springs. The only witnesses who testified for appellant were the President, Secretary, and a member of the Board of Directors. According to the testimony of Mr. Robert Harrison, Secretary of the proposed association, no problems had arisen in Cleburne County with regard to obtaining home financing. Mr. Harrison was unable to name any qualified borrower within Cleburne County who had been turned down for a loan by existing financial institutions, and, in fact, the witness stated, "Well we have been satisfied with the service." The witness admitted that quick and efficient loan service has been received from Batesville Federal Savings and Loan Association, and other neighboring lending institutions. Likewise, on cross-examination, Mr. Harrison admitted that, based on the experience of 1962, 1963, and the first ten months of 1964, there were not enough loans available in the county for the new association to be successful. As Mr. Harrison stated, "Based on the past figures, we might as well just close the door." The witness also stated that the proposed association would need a million dollars volume before it could start making money, and that available loans would have to be four times greater than at present. The evidence reflected that there were only 2,858 householders in the county in 1965, and that building permits issued numbered only 36, 20, and 21, respectively, for the years 1962, 1963 and 1964. Another figure which would appear pertinent to the matter is the public school enrollment, which fell from 2,010 in 1961 to 1,855 in 1965. I recognize that Greer's Ferry at Heber Springs will bring economic

growth to Cleburne County, but to what extent, cannot yet be known. At any rate, I am unable to agree that the testimony established a public need for the proposed association.

The other requirement for a charter that I deem here controlling is found in Sub-section (4). It provides:

"The operation of the proposed association will not unduly harm any other existing association or federal savings and loan association or other financial institution."

My dissent is based mainly on the proof relating to this phase of the litigation. There are three small banks in Cleburne County, two in Heber Springs, and one in Quitman. These banks have combined assets of only about eight million dollars. The net earnings of the bank at Quitman in 1963 amounted to $10,869.36, and the net earnings of the Cleburne County Bank were $16,319.52.[1] It is my view, from the evidence offered, that the establishment of the proposed savings and loan association could have a most harmful and detrimental effect upon the existing financial institutions within the county. The proof reflected that the association would expect to draw its principal support from the Cleburne County area. Several witnesses, experienced in finance, testified that the granting of the application would have an adverse effect on existing lending agencies in the county. Mr. Warren Bass, a certified public accountant, who has served as a representative of the state of Arkansas on the Governing Council of the American Institute of Certified Public Accountants, and who is also a former member of the State Banking Board, prepared a series of exhibits projecting the position of the existing banks in the Cleburne County area after first assuming the existence of the proposed savings and loan institution. According to his testimony, if the proposed association

[1]Paul Hensley, President of the Arkansas National Bank in Heber Springs, supported the application by letter.

had existed in 1963, the three banks in Cleburne County, collectively, would have shown a profit of $3,101.69. He concluded his testimony by stating:

"Well, in summary, the way I would summarize it, that you would strengthen the weak by weakening the strong. These are not big institutions we are talking about. There is a thin profit margin involved. Our forecast again based on realistic accounting information shows that the savings and loan would be a loss situation, that there would not be material profits made by the other three insitutions in the county and I had rather summarize it by saying it would almost be like strengthening the weak by weakening the strong."

It may well be that, in the not too distant future, the economy of Cleburne County will be such as to support this additional financial institution, but I am presently of the view that the granting of the charter was premature.